**INVESTITIONS- UND HANDELS-BANK A. G., Plaintiff,**

v.

**UNITED CALIFORNIA BANK INTERNATIONAL, Defendant.**

No. 67 Civ. 1969.

United States District Court
S. D. New York.

Jan. 5, 1968.

Herzfeld & Rubin, New York City, for plaintiff. Herbert Rubin, Walter Herzfeld, Michael Hoenig, New York City, of counsel.

Shearman & Sterling, New York City, for defendant. Henry Harfield, Jon J. Masters, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Plaintiff instituted this action seeking to recover a loss of $274,000 which it alleges it sustained by reason of defendant's negligence, breach of contract and breach of fiduciary duty. Defendant is a corporation organized under the Edge Act (12 U.S.C. §§ 611–631) and jurisdiction is founded on 12 U.S.C. § 632. With its answer, defendant moved for summary judgment dismissing the complaint on the ground that "plaintiff's alleged causes of action have no merit." Plaintiff opposes defendant's motion on the ground that there are genuine issues of material fact, and on the further ground that defendant's motion is premature because plaintiff has not had an opportunity to conduct its discovery.

For the reasons hereinafter stated, there are material issues of fact which must await trial, and, accordingly, defendant's motion for summary judgment is denied.

From the pleadings, motion papers, affidavits and exhibits, the following facts appear:

By cable dated April 26, 1966, plaintiff (which had previously received a credit line from defendant of $250,000) advised defendant (then known as Western Bancorporation International Bank) of the opening by plaintiff of its irrevocable letter of credit in an amount not exceeding $274,000 in favor of Expert Export Services (Expert), 663 Fifth Avenue, New York, for the account of plaintiff's customer, Manfred Derflinger, International Export Service, Wiesbaden, Germany. The cable set forth the terms of the letter of credit, listed the documents against which the amount of the credit would be available and stated that the documents were to cover a shipment to Hamburg, Germany of 8,000 "brand new" Polaroid cameras and that all documents "may be presented to * * * [plaintiff] directly by franklin national bank [Franklin], new york." In the cable plaintiff instructed defendant as follows:

"please advise beneficiaries [Expert] of the opening of this credit by phone and mail through franklin national bank, 130 pearl street, new york, without adding your confirmation."

The letter of credit was subject to Uniform Customs and Practice For Documentary Credits (1962 Revision), International Chamber of Commerce Brochure No. 222 (UCP).

On April 26th, upon receipt of plaintiff's cable, defendant sought to notify Expert directly instead of notifying Expert through Franklin. Finding no listing for Expert in the Manhattan telephone directory, an employee of defendant telephoned 663 Fifth Avenue, the address given for Expert in the cable. He was connected with the Six Sixty Three Fifth Avenue Service Corp. which advised that it operated an answering service for Expert, and the employee left a message for Expert to call defendant. Later in the day, one Nelson telephoned defendant, stating that he was an authorized agent of Expert, and defendant notified Nelson of the opening of the letter of credit by plaintiff. Defendant also notified Expert by mail of the opening of the letter of credit and, on Mr. Nelson's representation that he was anxious to have the letter of credit transmitted to Expert as soon as possible, defendant mailed the terms of the letter of credit to Expert at 663 Fifth Avenue, New York. On the same day, defendant sent plaintiff a form entitled "Letter of Credit Issuance Advice" stating that "In accordance with your instructions, we have: advised your credit." Printed on the form was the following: "The original advice has been sent to the beneficiary through:" The information called for was left blank, so that plaintiff was

not informed as to how notification was made.

Thereafter, defendant, on behalf of Expert, requested changes in the terms of the letter of credit, which were agreed to by the plaintiff, including a change providing for presentation of documents to and payment by defendant instead of Franklin. Another substantial change made at defendant's request on behalf of Expert related to the packing list. Originally, the letter of credit provided for a "packing list issued and certified correct by the freight forwarder leyden shipping corp. [Leyden], new york, showing number and models shipped." The letter of credit was amended to provide for a packing list issued by Expert and a forwarders receipt signed by Leyden showing "numbers and models shipped."

On May 18, 1966, upon presentation of documents by Expert to defendant, defendant paid Expert's draft in the amount of $274,000 and forwarded the documents to plaintiff. The next day Expert opened a checking account with defendant, depositing therein some $91,-000 evidenced by checks received from defendant the previous day.

On or about May 20, 1966, plaintiff (which presumably had received the documents) reimbursed defendant in the amount of $274,000.

Following its arrival in Germany, on June 21, 1966 the shipment was opened and found to consist of empty lead-lined cases. Plaintiff so informed defendant by cable dated June 22, but made no claim that defendant's payment to Expert or the documents transmitted to plaintiff were not in accordance with the letter of credit as amended. There is no evidence that plaintiff knew at this time that defendant had notified Expert directly instead of through Franklin, and concededly plaintiff was not informed of the steps taken by defendant to notify Expert.

By June 22, Expert had reduced the balance in its checking account with defendant to $679.50. Thereafter, Expert reduced the remaining balance to $12.60, and on September 22, 1966 defendant sent Expert a check for $12.60 and closed Expert's account "due to inactivity."

The investigation which followed the discovery of the empty cases disclosed that one Galvin had filed in the County Clerk's Office a "Certificate of Conducting Business under an Assumed Name," viz., Expert; that Nelson acted on behalf of Expert under a power of attorney; that Expert had no office or employees and had engaged in no business other than the transaction here involved; that Six Sixty Three Fifth Avenue Service Corp. operated a mail drop and telephone answering service used by Expert, through Nelson, to obtain messages left for Expert; that Expert, Nelson, Galvin, and plaintiff's customer Derflinger, were not financially responsible and became insolvent, and that there were substantial unsatisfied judgments against Nelson and Galvin in New York.

From the foregoing it is clear that by notifying Expert directly instead of through Franklin, defendant failed to carry out plaintiff's instructions. It can derive no comfort from Articles 8 and 9, UCP, since it failed to follow plaintiff's instructions. Cf. Laudisi v. American Exch. Nat'l Bank, 239 N.Y. 234, 239, 146 N.E. 347 (1924). There is an issue of fact to be resolved at trial as to whether defendant's failure to follow instructions was the proximate cause of the loss sustained by plaintiff. See, e. g., St. John v. New Amsterdam Casualty Co., 357 F.2d 327 (5th Cir. 1966).

Plaintiff contends that its purpose in requiring notification through Franklin was its understanding that Expert was a customer of Franklin and plaintiff expected Franklin to report to it relevant information known to Franklin concerning Expert. Moreover, according to plaintiff, it assumed from the "Letter of Credit Issuance Advice" received from defendant that defendant had notified Expert through Franklin, in accordance with plaintiff's instructions, and would have acted differently had it known that defendant notified Expert directly. Linden v. National City Bank, 12 A.D.2d 69,

208 N.Y.S.2d 182 (1st Dept. 1960), relied upon by defendant, merely holds that the wrongdoer or party in default is responsible only for the proximate, and not for the remote, consequences of his actions. Whether plaintiff's loss was a proximate or remote consequence of defendant's failure to follow instructions can only be determined at trial.

As plaintiff's agent, defendant may have had a duty, depending upon proof of the surrounding facts and circumstances, to report to plaintiff information known to defendant, Articles 8 and 9, UCP, notwithstanding. See Restatement (Second), Agency § 381, comment a (1958). In failing to inform plaintiff of the manner of notification and in acting on behalf of Expert in negotiating substantial changes in the letter of credit, defendant may have misled plaintiff as to Expert's financial responsibility. The facts developed on this motion indicate that defendant was motivated by its desire to substitute itself for Franklin as the paying bank and to acquire Expert as a customer.

For the foregoing reasons, there are issues of fact which cannot be decided on this motion, and defendant's motion for summary judgment is denied.

It is so ordered.